UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL CICCOTTO,<br><br>    Plaintiff,<br><br>    v.<br><br>AXIOM BANK NATIONAL ASSOCIATION<br><br>    Defendant. | Civil Action No. _____ |

**COMPLAINT**

Plaintiff, Paul Ciccotto ("Mr. Ciccotto" or "Plaintiff) by and through its undersigned counsel, hereby files this Complaint, seeking monetary damages and such other relief as the Court deems appropriate, against Defendant Axiom Bank N.A. ("Axiom Bank" or the "Bank"), and in support thereof alleges as follows:

**THE PARTIES**

1. Plaintiff Paul Ciccotto is an individual residing at 13 Snapdragon Dr., Newtown, PA 18940 and a former employee of Axiom Bank.

2. Defendant Axiom Bank, N.A. is a national bank with its principal place of business and headquarters at 258 Southhall Lane, Maitland, Florida 32751.

3. Axiom Bank is a national bank insured by the Federal Deposit Insurance Corporation ("FDIC") and member of the Federal Reserve System ("FRS"). Axiom Bank's Chief Executive Office ("CEO") is Ross Breunig.

4. Axiom Bank is subject to regulation by several federal agencies, including the Office of the Comptroller of the Currency ("OCC"), the FDIC, and the Federal Reserve (collectively referred as the "Agencies").

5. Axiom Bank hired Mr. Ciccotto as a permanent remote worker and knew at all relevant times that Mr. Ciccotto was living, and would be working fully, in the State of Pennsylvania. In doing so, Axiom Bank benefited from maintaining Mr. Ciccotto's residence in Pennsylvania, avoiding the cost of paying for relocation. At all times relevant hereto, Axiom Bank paid state employment taxes in Pennsylvania.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the federal whistleblower law codified at 12 U.S.C. § 1831. This Court further has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the suit is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs.

7. Defendant is subject to personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(1)(d) and 42 Pa. Consol. Stat. Ann. § 5322, as Defendant has engaged in tortious acts within the state as set forth herein arising out of the business and service contracts with which Defendant has engaged in this Commonwealth Including but not limited to employing Mr. Ciccotto in this Commonwealth, paying employment taxes in this Commonwealth, collecting deposits from Pennsylvania customers, and opening and maintaining and servicing accounts with active retail customers in Pennsylvania. By engaging in such actions Defendants have purposefully availed themselves to the benefits and responsibilities of doing business in Pennsylvania and thus have the requisite minimum contacts with this Commonwealth.

8. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(3).

**FACTUAL ALLEGATIONS**

**Mr. Ciccotto's Employment with Axiom Bank**

9. On or about December 6, 2021, Mr. Ciccotto commenced his employment with Axiom Bank. Mr. Ciccotto was offered and accepted a three-year contract of employment with Axiom Bank as the Executive Vice President of Bank Transformation. Axiom later decided to promote Mr. Ciccotto to Chief Administrative Officer in February of 2023.

10. In his positions as President of Bank Transformation and Chief Administrative Officer, Mr. Ciccotto was responsible for overseeing several departments at Axiom Bank, including the ACH, Global Wire Transfer, Third Party Risk Management, Banking as a Service (BaaS), Loan Operations, Debit Card Services, ATM, Core IT Support, Data Security, and Customer Call Center departments.

**Mr. Ciccotto Raises Concerns Related to Axiom Bank's Unlawful Practices**

11. In and around the spring of 2023, Mr. Ciccotto became uncomfortable with certain practices and activities in which the Bank began to become involved. These included practices that in Mr. Ciccotto's opinion jeopardized the Bank's compliance with anti-money laundering laws, federal safety and soundness requirements for depository institutions, and compliance with specific OCC regulations and requirements that were particularly imperative due to the fact that the Bank was already considered a Troubled Institution.

12. Mr. Ciccotto became concerned that Axiom Bank's CEO was prioritizing revenue and growth without due regard for compliance with federal banking laws and regulatory requirements. For instance, Ciccotto objected to the Bank's extensions of unsecured credit in the form of overdraft protection to Banking as a Service Partners ("BaaS

Partners"), without ascertaining their creditworthiness. These overdrafts, provided without charging fees or interest, amounted to millions of dollars in free, unsecured loans, without knowledge of the creditworthiness of the borrowers.

13. Ciccotto also began raising objections to the circumvention of third-party risk management. In particular, Mr. Ciccotto objected to Axiom's routine practice of granting exceptions to vendors with missing documentation and false finances. In fact, most vendors did not pass Axiom Bank's third-party risk standards. For instance, with respect to a vendor named Neo Pay, Mr. Ciccotto objected to Axiom Bank that the vendor was approved "in the dead of the night."

14. Additionally, Mr. Ciccotto recommended that Axiom find another core system due to significant and systematic deficiencies with CSI, Axiom's existing core system. When Mr. Ciccotto began looking for replacements for CSI, Mr. Breunig quickly shut it down. As a result of these issues, Mr. Ciccotto recommended that the Bank suspend its BaaS program until the outstanding problems could be fixed because there were too many monitoring deficits creating safety and soundness risks, as well as consumer risks.

**Axiom Bank Retaliates Against Mr. Ciccotto**

15. Almost immediately after Mr. Ciccotto objected to these practices, Axiom and Mr. Breunig began a pattern of retaliation. Mr. Ciccotto became marginalized by Axiom and was routinely circumvented in his role. By way of example, Mr. Ciccotto's subordinate team members began receiving meeting invitations with Axiom leadership that excluded Ciccotto.

16. Axiom eliminated Mr. Ciccotto from meetings with BaaS Partners, and Mr. Breunig began talking directly to Mr. Ciccotto's reports without his involvement. Ultimately,

Mr. Ciccotto became isolated, having little discourse with Mr. Breunig, other committees, and Bank partners that, prior to his objections, were a routine part of his job.

17. Mr. Ciccotto, with the assistance of other employees including but not limited to Wesley Ward, Raami Ibrahim, and John Zazzera, reported the aforementioned concerns to the Federal Reserve Board on or about June 12, 2023.

18. Axiom Bank knew or strongly suspected that Ciccotto was involved in the complaint to federal banking authorities as a result of inquiries raised by the OCC following the complaints.

19. Almost immediately after initiating these complaints and based on Breunig's suspicion that Ciccotto was responsible for Complaints that lead the OCC to initiate additional inquiries regarding Bank practices, Ciccotto -- along with the aforementioned employees -- were terminated based on an alleged reduction in force and elimination of their positions.  Importantly, each of the persons responsible for the suspected complaints to federal banking authorities were terminated almost immediately before the OCC's follow-up visits scheduled after the suspected complaints.

20. While Axiom Bank has claimed that Ciccotto's position was eliminated along with the other employees that objected to Mr. Breunig's unsafe and unlawful practices, the reality is that within ninety days of the purported job eliminations, Axiom Bank was hiring a new Chief Compliance Officer as well as the other positions that were allegedly eliminated at the same time.

21. Mr. Ciccotto's termination was not for cause and did not occur in the context of a change in control.  Upon information and belief, Mr. Ciccotto's termination was the

result of the Bank's desire to remove and retaliate against him for making complaints to federal banking authorities.

22. Notwithstanding the foregoing, the Bank failed and refused to pay Mr. Ciccotto the monies owed under his three-year employment contract. This amounts to a willful breach of the Bank's employment contract with Mr. Ciccotto.

23. As a result of his unlawful termination and the contractual breach, Mr. Ciccotto has sustained damages caused by the Bank in excess of $795,000.

## COUNT I- BREACH OF CONTRACT

24. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

25. Defendant entered into a three-year employment agreement with Mr. Ciccotto (the "Agreement"). *See* Employment Agreement, attached hereto as **Exhibit 1**. Mr. Ciccotto has satisfied any and all obligations under the Agreement and has not committed any material breaches thereof.

26. Under the terms of the Agreement, Axiom Bank agreed to employ Mr. Ciccotto for a term of three years and stated that the agreement would only be void if Mr. Ciccotto's job was terminated for cause. Ex. 1. No provisions allowed the Bank to terminate Mr. Ciccotto without cause, at will, or with any specified notice in writing or otherwise. Except for a termination for cause, the Bank was contractually obligated to a three-year term of employment.

27. The three-year employment agreement provided that Mr. Ciccotto would receive a salary in the amount of $265,000.00 and was "guaranteed a Minimum Bonus" of $83,000 so long as he was still employed at the Bank and in good standing. Ciccotto was also entitled to participate in a Leadership Incentive Plan.

28. Mr. Ciccotto's Agreement with the Bank set forth that it if he was terminated for cause, all agreements were void. The agreement referred to additional terms set forth in a "Change in Control Agreement" that provided the terms of severance in the event the Bank was acquired. Nothing in either the employment agreement nor the change of control agreement indicated that the Bank had the right to terminate Mr. Ciccotto at will or with notice. Except for stating that the Agreement was void in the event Mr. Ciccotto was fired for cause, or there was a change in control (in which certain severance provisions applied) the Bank was contractually obligated to a three-year employment contract with Mr. Ciccotto.

29. On or about July 3, 2023, Mr. Ciccotto was terminated from his employment with Axiom Bank because of the stated reason of a purported "job elimination." Mr. Ciccotto was not terminated for cause and Mr. Ciccotto was specifically told during the exit meeting that his release was strictly a job elimination and not performance-based.

30. Despite demand that the Bank pay out the term of the employment agreement, the Bank refused.

31. By failing to pay Mr. Ciccotto the entirety of the compensation owed to him under the Agreement, Axiom Bank has materially breached the Agreement with Mr. Ciccotto.

32. As a proximate result of Axiom Bank's breach of its contractual obligations, Mr. Ciccotto has suffered and continues to be irreparably harmed and monetarily damages in an amount to be determined at trial, but such damages are at least in excess of $795,000.

**COUNT II- UNJUST ENRICHMENT**

33. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

34. Axiom Bank has received and appreciated the benefit of Mr. Ciccotto's labor, time, and resources and has failed to provide the full amount of agreed-upon compensation to Mr. Ciccotto.

35. As alleged herein, Mr. Ciccotto rightfully expected that his employment with Axiom Bank would be for the full three-year term and, as such, he expected full remuneration of all compensation that Axiom Bank agreed to provide during the time that the benefit was conferred to Axiom Bank.

36. The acceptance and retention of that benefit by Axiom Bank, without full payment to Mr. Ciccotto, would be unjust and inequitable for Axiom Bank to retain the benefits without full payment of value.

37. As a proximate result of this unjust enrichment, Mr. Ciccotto has suffered and continues to be irreparably harmed and monetarily damages in an amount to be determined at trial, but such damages are at least in excess of $795,000.

### COUNT III- VIOLATION OF PENNSYLVANIA WAGE PAYMENT LAW
### (PA ST 43 P.S. § 260.1)

38. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

39. Pursuant to 43 P.S. § 260.3, "[e]very employer shall pay all wages…due to his employees on regular paydays designated in advance by the employer." PA ST 43 P.S. § 260.1.

40. Under 43 P.S. § 260.3(a), "[w]henever an employer separates an employee from the payroll, or whenever an employee quits or resigns from his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable." PA ST 43 P.S. § 260.3(a).

41. Axiom Bank has intentionally failed to pay the full amount of wages to Mr. Ciccotto that were agreed-upon and required pursuant to the Agreement.

42. Axiom Bank's knowing failure to pay the full amount of wages to Mr. Ciccotto was not an inadvertent error made in good faith and Axiom Bank did not have any reasonable grounds for believing that the failure to pay wages was not a violation.

43. These actions constitute violations of the Pennsylvania Payment Law.

44. As a result of Axiom Bank's violations of the Pennsylvania Wage Payment Law, Mr. Ciccotto has suffered and continues to be irreparably harmed and monetarily damages in an amount to be determined at trial, but such damages are at least in excess of $795,000. Mr. Ciccotto is further entitled to liquidated damages, as well as costs and reasonable attorney's fees, pursuant to 43 P.S. §§ 260(9)(a) and 260.10.

## COUNT IV- WHISTLEBLOWER COMPLAINT
## (12 U.S.C. § 1831(J))

45. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

46. Section 1831(j)(a)(1) of the Federal Deposit Insurance Act provides that "[n]o insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privilege of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal Banking agency or to the Attorney General regarding (A) a possible violation of any law or regulation or (B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety; by the depository institution or any director, officer, or employee of the institution." 12 U.S.C. § 1831(j)(a)(1).

47. Plaintiff, both directly and indirectly, objected to the unlawful practices of Axiom Bank and, further, both directly and indirectly, reported these violations to the OCC and/or Federal Reserve and/or participated in these reports. These actions constitute protected expressions pursuant to 12 U.S.C. 1831(j).

48. Axiom Bank attempted to prevent Plaintiff from exercising his whistleblower rights by blocking his access to communicate with other Axiom Bank employees, the Board of Directors, and the OCC.

49. When as a result of additional OCC inquiries Axiom Bank suspected that Ciccotto had participated in or initiated complaints to federal banking authorities it terminated his employment. As a result, Plaintiff has suffered an adverse action by Axiom Bank that is causally linked to his whistleblower activities.

50. As a result of Axiom Bank's actions, Mr. Ciccotto has suffered monetarily damages in an amount to be determined at trial, but such damages are at least in excess of $795,000.00 and he is entitled to the reimbursement of all legal fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, as to all counts, Plaintiff respectfully requests that the Court enter judgment in its favor and award the following relief against Defendant:

A. That Plaintiff be awarded compensatory damages in an amount of $795,000 or to be determined at trial;

B. That Plaintiff be awarded its actual and consequential damages according to proof at trial;

C. That Plaintiff be awarded liquidated and treble damages as permitted by law;

D. That Plaintiff be awarded prejudgment interest to the fullest extent available under applicable law;

E. That Plaintiff be awarded costs and reasonable attorney's fees to the fullest extent available under applicable law; and

F. That Plaintiff be granted such other and further relief as the Court deems just and proper.

## Demand for Jury Trial

Plaintiff respectfully requests and demands a jury trial on all issues so triable.

Respectfully submitted,

MITCHELL SANDLER LLC

*/s/ V. Amanda Witts*
V. Amanda Witts, Esq. (PA Bar No. 308902)
Ari Karen, Esq. (*pro hac forthcoming*)
Sean Harding, Esq. (*pro hac forthcoming*)
1120 20th Street, NW, Suite 725
Washington, D.C. 20036
(202) 886-5267
v.awitts@mitchellsandler.com
akaren@mitchellsandler.com
sharding@mitchellsandler.com

**Attorneys for Plaintiff, Paul Ciccotto**